## BLUE SPRINGS MINING CO. v. MCILVIEN.

### (*Knoxville.* September 19, 1896.)

1. SALE. *Warranty.*

 The manufacturers of a furnace for iron smelting cannot be held to have made an implied warranty that lead ore could be successfully smelted therewith, because of a representation by the inventor of an apparatus attached thereto, who made the sale, that by such apparatus the furnace was adapted to smelt lead ores. (*Post, pp. 226–230.*)

 Cases cited: 165 Pa. St., 529 (S. C., 44 Am. St. Rep., 674); 28 U. S. App , 889.

2. BILLS AND NOTES. *Innocent holder.*

 A manufacturer of furnaces, who sells them to a specialist to be used with an attachment invented by the latter, under an agreement that notes received by the latter on a resale shall be made payable directly to the manufacturer, is an innocent holder of such notes, and not chargeable with representations made by his vendee as to the capabilities of the furnace with the attachment. (*Post, pp. 230, 231.*)

3. FRAUD. *Waiver of.*

 Fraud and misrepresentation as to the capability of a furnace, made by the seller, are waived by the purchaser's promise to pay the purchase-money notes after learning of the fraud. (*Post, p. 231.*)

 Case cited and approved: Smith v. Greaves, 15 Lea, 459.

---

### FROM HAMILTON.

---

Appeal from Circuit Court of Hamilton County. JOHN A. MOON, J.

WHITE & MARTIN for Mining Co.

PRITCHARD & SIZER for McIlvien.

WILKES, J. This is an action upon two notes given the plaintiffs, McIlvien & Speigle, by the defendant mining company and S. W. Divine, security, for $400 each. It was commenced before a Justice of the Peace, appealed to the Circuit Court of Hamilton County, when there was judgment for the plaintiffs. The case was tried by the Judge without a jury, and defendants appealed and have assigned errors.

. It is insisted that there is a failure of consideration of the notes; that they were given for a smelting furnace that utterly failed to do the work for which it was sold and was worthless and caused damage to the defendants instead of proving a benefit to them. The proof shows that the sale was made by Hartsfeld and that he represented and warranted that the furnace would cheaply and successfully smelt the lead ore of the company, and that it failed to meet the representations and warranty, and the rights of the defendants as against him are not disputed, but the plaintiffs claim that they made no representations or warranty and are innocent holders of the notes for value and are not affected by the conduct or representations of Hartsfeld. The Circuit Judge took this view of the case.

Without going into the full details of the transactions between the defendant company and Hartsfeld,

we come to the conclusion from the record that plaintiffs were manufacturers of furnaces, boilers, tanks, etc., and that Hartsfeld used and sold their furnaces in connection with a condensing apparatus, for which he claimed to have a patent, and which was represented by him to be specially adapted to smelting lead ores. Whether this apparatus was made by plaintiffs or others does not fully appear. Hartsfeld was not in good credit, and the plaintiffs retained the title to the furnaces manufactured by them until they were sold and paid for.

The furnace was sold while it was at plaintiffs' place of business, but the representations as to what it would do, in connection with the attachment, were made by Hartsfeld. The notes were made payable to plaintiffs, and a cash payment of $150 was also made to them by the defendant company, and they shipped the furnaces to the company. Hartsfeld had examined the ores of the company, and represented that his apparatus would smelt them more successfully and economically than any other. He personally took charge of the operation of the smelter after it was put up, and the agreement with him was, that the company was not to pay for it until it was proven a success. He was not able to use it satisfactorily, and as a lead smelter it proved a failure. The furnace was made by plaintiffs about a year before it was sold to the company, and Hartsfeld had been selling their furnaces for a number of years. It appears that they were furnaces

for iron smelting, but the Hartsfeld apparatus, it
was claimed by him, adapted them to smelting lead
ores.    It appears, also, that when Hartsfeld sold to
the company, he consulted plaintiffs as to whether
the terms of sale would be satisfactory to them,
and, being assured that they would be, he made
the sale.

It is insisted that the Court erred in not finding
that the furnace was expressly warranted by plaintiffs
to smelt the company's ore, and also in not finding
that there was an implied warranty that it would
do the work for which it was bought, and that
plaintiffs were not bound by or responsible for such
warranties; that the Court further erred in not find-
ing as a. fact that the plaintiffs took the notes in
payment of a pre-existing debt from Hartsfeld, and
in not holding that Hartsfeld was their agent, and
they were bound by his representations, and that
they were the real vendors of the furnace and not
innocent holders of the notes.

There was no demand for a written finding of the
law and facts, or either of them, and there is none
of either in the record, but simply a general finding
and judgment for the plaintiffs, without showing the
grounds.

Quite elaborate briefs and argument have been pre-
sented on behalf of the company and its surety, and
a full discussion made of the law as to warranties,
innocent holders of negotiable paper, etc.    We think
the law and facts of the case lie in a very narrow

compass. We are satisfied from the record that there was sufficient evidence to warrant the trial Judge in the conclusion that Hartsfeld alone made the representations and warranties as to what the furnace would do, and that the plaintiffs had no connection therewith, except simply to furnish the furnaces and apparatus ordered by Hartsfeld and get the proceeds of sale when it was effected. When the company executed their notes to plaintiffs and paid the cash, it was evident that it was willing to look to Hartsfeld for the successful performance of the furnace, and did not expect the plaintiffs to make good his representations or warranties. No such demand was made of them and there was no such understanding or agreement. The plaintiffs did not manufacture this furnace to be used as a smelter of lead, but as an iron furnace. The condensing apparatus was Hartsfeld's patent, and manufactured for him, and the plaintiffs cannot be held to have made any implied warranty that the furnace and apparatus, or either, would successfully smelt lead ore. The mill company did not trust to their skill and knowledge as manufacturers to furnish a smelter to do a special work, but they bought a specific article upon the representation and warranty of a third person.

The testimony of S. W. Divine, the president of the company, who bought the furnace for the company, is to the effect "that he had no negotiations with plaintiffs, but bought of Hartsfeld and relied alone on his representations that the furnace would

do the work.'' This is further borne out by his letters to the plaintiffs, one in January, 1894, about three months after the sale was made, the cash had been paid and notes given, in which he (Divine), for the company, requested an extension of time, and used this language : '' We will pay you regardless of consequences, as we understand you are in no way responsible or connected with the responsibility of the guarantee.'' And in a subsequent letter of May 10, 1894, Divine, after stating his numerous complaints against Hartsfeld, adds : '' I understand we have no recourse on you, and I am not trying to evade your claim, but we are not in condition to pay you, and ask for an extension until such time that Mr. Hartsfeld can get the furnace in working order.''

We think the record abundantly shows that the company did not rely upon any warranty or representations of plaintiffs, for none are shown to have been made by them, neither was there an implied warranty, for the company did not rely upon the superior knowledge and skill of the plaintiffs as manufacturers to furnish a furnace and apparatus suitable for a special purpose, but it ordered a specific article through a third person, upon the representation of such third person, that it would do the work. The distinction is marked between the two classes of cases. *Jarecki Mfg. Co.* v. *Kerr*, 165 Penn. State, 529 (44 Am. State Reps., 674); *Morris* v. *Bradley Fertilizer Co.*, 28 U. S. App., 889.

We are of opinion that plaintiffs cannot be

considered as having accepted the notes in question in payment of a pre-existing debt.    The proof is clear that the plaintiffs manufactured furnaces. Hartsfeld, who was a mining expert and specialist, bought and sold them to be used with his attachment, for a specified price, but inasmuch as Hartsfeld was not in good credit, plaintiffs required cash if the furnaces were sold by Hartsfeld to third persons, or they took the notes of the purchaser direct to themselves.

The indebtedness of Hartsfeld to plaintiffs arose when he sold the furnaces, and when this was done, the cash was to be paid and notes to be executed to the plaintiffs.    There is no proof that the furnaces were unfit for the purposes for which they were manufactured, which was the smelting of iron, but the defect appears to have been in the condensing attachment, furnished by the expert, Hartsfeld, and, as to this, he alone made warranties and representations.    But if there had originally been fraud and misrepresentation on the part of plaintiffs which would have entitled defendant to relief as against plaintiffs, it was clearly waived by the act of defendant in promising to pay the notes after being apprised of the defects in the machinery, and in asking and receiving an extension of time upon such promises.    *Smith* v. *Greaves*, 15 Lea, 459.

There is no error in the judgment of the Court below, and it is affirmed, with costs.